**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:23-CV-21723**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| Plaintiff, | : |
| v. | : |
| **ADRIAN ABRAMOVICH,** | : |
| Defendant. | : |

**COMPLAINT FOR CIVIL MONETARY FORFEITURE**

1. The United States of America, acting upon the request to the Attorney General by the Federal Communications Commission ("FCC"), files this action against Defendant Adrian Abramovich to recover a civil monetary forfeiture.

**INTRODUCTION**

2. The Truth in Caller ID Act of 2009, 47 U.S.C. § 227(e), prohibits any individual from falsifying caller identification when done with an intent to defraud, cause harm or wrongfully obtain a thing of value.

3. Accurate caller identification allows consumers to make informed decisions about which calls to accept and whether to engage with the person on the other end of the telephone. As technology has advanced, robocalls have become more pervasive, making robocalling campaigns more disruptive and harder to stop.

4. During a three-month period, Abramovich originated nearly 100 million calls, averaging over a million calls a day.

5. The FCC examined 80,000 of these calls over that period and determined, in an administrative proceeding described further below, that Abramovich falsified, or "spoofed," his

caller identification "with the intent to defraud, cause harm, or wrongfully obtain anything of value," in violation of 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604. After notice and due consideration of Abramovich's arguments against finding a violation or imposing a penalty, the FCC entered a forfeiture order assessing a penalty. Abramovich has not paid the forfeiture, and the FCC has requested recovery on its behalf.

6. In accordance with 47 U.S.C. § 504(a), the United States seeks to enforce the forfeiture against Abramovich.

## JURISDICTION AND VENUE

7. The Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355, as well as 47 U.S.C. § 504(a).

8. Venue is proper in the Southern District of Florida based on 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a), as well as 47 U.S.C. § 504(a), because at all relevant times Abramovich had an office located within this District, Abramovich resided within this District, and a substantial part of the acts or omissions on which this action is based occurred within this District.

## PARTIES

9. Plaintiff is the United States of America.

10. Defendant Adrian Abramovich is a resident of the State of Florida. He is the former incorporator, officer, and director of Marketing Strategy Leaders, Inc. ("MSL") and Marketing Leaders, Inc. ("ML"). Both MSL and ML are, on information and belief, defunct Florida companies and were defunct at all times relevant to the Complaint.

## STATUTORY AND REGULATORY BACKGROUND

11. The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign wire and radio communications pursuant to the Communications Act of 1934, as amended, 47 U.S.C. §§ 151-511 ("Act").

12. The Truth in Caller ID Act, as codified in Section 227(e) of the Act, makes it unlawful for "any person within the United States, in connection with any telecommunications or IP-enabled voice service . . . to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value." 47 U.S.C. § 227(e)(1). The practice of knowingly transmitting misleading or inaccurate caller identification information is commonly referred to as "spoofing." Section 64.1604 of the FCC's rules implements Section 227(e)'s prohibition on unlawful spoofing. 47 C.F.R § 64.1604.

13. Section 227(e)(5)(A) of the Act authorizes the FCC to impose a forfeiture of up to $10,000 for each violation, adjusted for inflation. 47 U.S.C. § 227(e)(5)(A).

14. Section 1.80(b)(4) of the FCC's rules, 47 C.F.R. § 1.80(b)(4), provides that the FCC may impose a forfeiture of up to $10,000 for each violation of 47 U.S.C. § 227(e)(1) and 47 C.F.R. 64.1604, adjusted for inflation. The FCC periodically adjusts the per-violation and maximum forfeiture amounts in Rule 1.80(b) to reflect inflation. *See Adjustment of Civil Monetary Penalties to Reflect Inflation*, 31 FCC Rcd. 13485 (EB 2016). When the FCC imposed the forfeiture in this case, the maximum per-violation penalty under the Act and the FCC's rules was $11,052.

15. Under Section 227(e)(5)(A)(ii) of the Act, the FCC may impose a forfeiture penalty on a person for a spoofing violation only after that person receives the notice required by Sections 503(b)(3) or (b)(4) of the Act. 47 U.S.C. § 227(e)(5)(A)(ii); *id.* §§ 503(b)(3), (b)(4).

16. Section 503(b)(4) of the Act provides that in the absence of a hearing before the Commission or an administrative law judge, as prescribed by Section 503(b)(3) of the Act, a forfeiture penalty may be imposed on a person after the FCC has issued a written notice of apparent liability to the person specifying the provisions that were apparently violated; the notice is actually received or is sent to such person's last known address; and such person is granted an opportunity to show in writing why no forfeiture penalty should be imposed. 47 U.S.C. § 503(b)(4).

17. In determining the amount of a forfeiture penalty, the FCC "take[s] into account the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E).

18. The FCC's forfeiture penalties are "payable into the Treasury of the United States" and are "recoverable . . . in a civil suit in the name of the United States." 47 U.S.C. § 504(a).

## FACTUAL BACKGROUND

19. Abramovich is one of the most notorious telemarketers in American history. His telemarketing campaigns often involved the use of an automated telephone dialing system or an artificial or prerecorded voice—a practice known as "robocalling."

20. The FCC's investigation of Abramovich began after receiving complaints from consumers and a web-based travel company, TripAdvisor, about "robocalls" offering vacation packages to Mexico and the Caribbean. The FCC also received complaints from an emergency medical paging service provider because Abramovich's voice calls were disrupting its paging service, which was not equipped to handle Abramovich's massive robocalling campaign.

21. When consumers answered one of Abramovich's calls, they typically heard a prerecorded message instructing them to "Press 1" to hear more about an "exclusive" vacation deal offered by well-known travel or hospitality companies such as "TripAdvisor," "Expedia," "Marriott," or "Hilton." Consumers were then transferred to a call center, where live operators attempted to sell the consumer one or more vacation packages (usually involving timeshare presentations), that were not affiliated with the travel and hospitality companies identified to the consumers during the prerecorded message.

22. The calls appeared as local numbers on caller ID systems. The area code and first three "prefix" numbers of the call matched the consumers' phone numbers. This tactic, known as "neighbor spoofing," is calculated to induce a consumer to answer the call because the consumer believes that the call is coming from someone in his or her community.

23. On investigation, the FCC determined that Abramovich had contracted with one or more clients to generate sales leads so that they could offer vacation packages to consumers. In October, November, and December of 2016, Abramovich made calls on 80 separate days, with a total call volume exceeding 96 million calls.

24. Abramovich's calls also used "neighbor spoofing" to increase consumer response to his sales calls, which in turn would increase the number of sales leads Abramovich generated.

25. On June 22, 2017, the FCC released a Notice of Apparent Liability for Forfeiture ("NAL") to Abramovich for causing the transmission of "misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value" in violation of 47 U.S.C. § 227(e)(1) and 47 C.F.R. § 64.1604. The NAL proposed to hold Abramovich directly liable for the total forfeiture. A true and correct copy of the NAL is attached as Exhibit "A."

26. Abramovich filed a (belated) written response to the NAL on July 27, 2017. A true and correct copy of Abramovich's response to the NAL is attached as Exhibit "B." In his written response to the FCC's charges, Abramovich did not deny the factual allegations made by the FCC. *See* Forfeiture Order at Section I, ¶ 2; Section III, ¶13.

27. On May 10, 2018, following consideration of the record, including the NAL and Abramovich's response, the FCC issued a forfeiture order ("Forfeiture Order") finding that Abramovich made 96,758,223 calls during a three-month period in 2016, of which at least 80,000 calls employed illegal spoofed caller ID information. A true and correct copy of the Forfeiture Order is attached as Exhibit "C."

28. The FCC also found that Abramovich failed to refute the NAL's finding that he intended to defraud, cause harm or wrongfully obtain anything of value when he made the spoofed calls. *See* Forfeiture Order at Section III, ¶¶ 13-20. The FCC affirmed in the Forfeiture Order the findings in the NAL. *See* Forfeiture Order at Section III, ¶ 20.

29. The Forfeiture Order concluded that Abramovich violated Section 227(e) of the Act and Section 64.1604 of the FCC's rules. *See* Forfeiture Order at Section III, ¶ 20. In addition, the Forfeiture Order declined to cancel or reduce the forfeiture amount proposed in the NAL (*see* Forfeiture Order at Section IV) and held that Abramovich (individually), MSL, and ML are jointly and severally liable for the full forfeiture amount.

30. The Forfeiture Order provided that if Abramovich did not pay the forfeiture in 30 days, the matter could be referred to the Attorney General for enforcement.

31. Despite due demand, the forfeiture remains unpaid.

## CLAIM FOR RELIEF

32. The United States realleges and incorporates by reference the allegations of the previous paragraphs.

33. Abramovich violated 47 U.S.C. § 227(e), and 47 C.F.R. § 64.1604, by making unlawful spoofed calls with an intent to defraud, cause harm, or wrongfully obtain a thing of value.

34. Abramovich's conduct supports the FCC's determination that Abramovich knowingly transmitted inaccurate caller identification information on at least 80,000 calls in October, November, and December 2016, and upon information and belief, on the more than 96 million calls made during that period.

35. Abramovich's conduct also supports the FCC's determination that Abramovich made these calls with an intent to defraud, cause harm or wrongfully obtain a thing of value.

36. Abramovich wrongfully made these calls, transmitting inaccurate caller identification information (and using "neighborhood spoofing") and misrepresenting his affiliation with travel brands with whom he had no relationship, all to obtain a thing of value by inducing call recipients to answer the call for the purpose of increasing consumer responses and sales leads to generate revenue for his telemarketing business. *See also* Forfeiture Order.

37. As Section 227(e)(5)(A) requires, the FCC issued an NAL to Abramovich that provided him with the notice required by Section 504(b)(4) of the Act.

38. The FCC issued a Forfeiture Order against Abramovich on May 10, 2018, under authority of 47 U.S.C. § 227(e)(5)(A), in which the FCC imposed a forfeiture penalty against Abramovich for his violations of the Act and the FCC's rules.

39. Despite demands, Abramovich has not paid the Forfeiture Order.

40. By reason of the foregoing, Abramovich is liable to the United States for a forfeiture penalty in accordance with 47 U.S.C. § 227(e)(5) (A)(ii) and 47 C.F.R. § 1.80.

WHEREFORE, Plaintiff, the United States of America, demands that the Court enter judgment against Defendant Adrian Abramovich, as follows:

    A.    Ordering payment of a forfeiture in an amount to be determined by the Court;

    B.    Awarding interest from the date of judgment at the legal rate in effect on the date of judgment, pursuant to 28 U.S.C. § 1961;

    C.    Awarding costs incurred by the United States in this action; and

    D.    Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 8, 2023

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General
Civil Division

MARKKENZY LAPOINTE
United States Attorney

RUTH A. HARVEY
Director
Commercial Litigation Branch

MICHAEL J. QUINN
Senior Litigation Attorney

/s/ Terrance A. Mebane
TERRANCE A. MEBANE
United States Department of Justice
Civil Division, Commercial Litigation Branch
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
Telephone: (202) 307-0493
terrance.a.mebane@usdoj.gov

*Counsel for the United States of America*