UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21723-CV-BLOOM/TORRES

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

ADRIAN ABRAMOVICH

    *Defendant.*

_____/

**REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant's motion to dismiss. [D.E. 6]. The motion is fully briefed and therefore ripe for disposition. [D.E. 10, 14]. After careful consideration of the complaint, briefing, relevant authority, and for the reasons discussed below, Defendant's motion to dismiss should be **DENIED**.[1]

---

[1] On November 27, 2023, the Honorable Beth Bloom referred Defendant's motion to dismiss to the undersigned for disposition. [D.E. 18].

## I. STATUTORY AND REGULATORY BACKGROUND

Through this lawsuit, the Government seeks to collect $120,000,000.00 from Defendant due to his alleged violation of the Truth in Caller ID Act of 2009 (the "Caller ID Act"), 47 U.S.C. § 227(e). Defendant's motion to dismiss is premised on two alternative theories of administrative error. Therefore, before we delve into the substance of Defendant's arguments, it is necessary to set the stage with a brief overview of the statutory and regulatory environment through which Defendant's case made it to federal court.

### A. *The TCPA and § 503(b) forfeitures.*

By enacting the Telephone Consumer Protection Act of 1991 ("TCPA"), Congress added § 227 to the Communications Act of 1934 as a means of restricting, among other things, telemarketing calls. *See* 47 U.S.C. § 227; TCPA, 105 Stat. 2394, 2395-2402. As originally enacted, the TCPA did not contain its own forfeiture penalty provision. Instead, forfeitures for violations of the TCPA were imposed under § 503(b) – a preexisting subsection that governed the procedures through which the Federal Communications Commission ("FCC" or the "Commission") could impose forfeiture penalties.

Importantly for our purposes, § 503(b)(5) essentially provides that, before a forfeiture may be imposed on certain individuals, the person must receive a "citation" from the FCC and be given a reasonable opportunity for a "personal interview" with an official from the FCC. 47 U.S.C. § 503(b)(5). In other words, some individuals are

entitled to an official warning before the FCC can impose a monetary penalty.[2] Unlike § 503(b)(5), however, § 503(b)(3) and § 503(b)(4) authorize forfeiture without an official warning so long as the FCC follows the procedures defined in those respective subsections. 47 U.S.C. § 503(b). For example, § 503(b)(4) permits the FCC to impose a forfeiture penalty against any person if:

> (A) the Commission issues a notice of apparent liability, in writing, with respect to such person;
>
> (B) such notice has been received by such person, or until the Commission has sent such notice to the last known address of such person, by registered or certified mail; and
>
> (C) such person is granted an opportunity to show, in writing, within such reasonable period of time as the Commission prescribes by rule or regulation, why no such forfeiture penalty should be imposed.

47 U.S.C. § 503(b)(4). The subsections are thus materially dissimilar: while § 503(b)(5) expressly provides that § 503(b)(3) and § 503(b)(4) forfeitures may not be imposed until the condition precedent defined in § 503(b)(5) is satisfied, neither § 503(b)(3) nor § 503(b)(4) make any reference whatsoever to § 503(b)(5).

### B.  *The Caller ID Act and citation regulation.*

Congress amended the TCPA by enacting the Caller ID Act, which is codified at 47 U.S.C. § 227(e) and makes it unlawful to "knowingly transmit misleading or

---

[2] The individuals entitled to a warning citation are persons who do not hold a license, permit, certificate, or other authorization issued by the FCC and who have not applied for such a license, permit, certificate, or other authorization. 47 U.S.C. § 503(b)(5). There is no dispute that Defendant falls within the scope of § 503(b)(5) because he does not possess – and has not applied for – the applicable licenses, permits, certificates, or authorizations. The issue is whether the condition precedent imposed by § 503(b)(5) applies to forfeitures penalties authorized by § 227(e).

inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain anything of value, unless such transmission is exempted pursuant to paragraph (3)(B)." 47 U.S.C. § 227(e)(1); Caller ID Act, 124 Stat. 3572, 3572-75.[3]

The TCPA, as amended by the Caller ID Act, differs from the original legislation in at least one material respect: § 227(e) has its own forfeiture provision. *See* 47 U.S.C. § 227(e)(5)(A). Instead of relying on § 503(b) to penalize those who violate § 227(e), the FCC has been empowered for more than a decade to penalize violators by employing the civil forfeiture mechanism created by § 227(e)(5)(A). To be sure, compliance with § 227(e)(5)(A) effectively requires compliance with the procedures defined in either § 503(b)(3) or § 503(b)(4) because § 227(e)(5)(A)(iii) expressly incorporates those notice provisions; however, nothing in § 227(e)(5)(A) expressly requires compliance with § 503(b)(5) because Congress omitted all references to § 503(b) generally and § 503(b)(5) specifically.

After Congress enacted the Caller ID Act, the FCC promulgated a rule providing that § 227(e) forfeiture actions do *not* require, as a condition precedent, the issuance of a warning citation under § 503(b)(5). *See* 76 Fed. Reg. 43196, 43201-02 (July 20, 2011) ("The Truth in Caller ID Act makes no reference to section 503(b)(5) of the Communications Act, . . . . [and] that omission suggests that Congress intended to give the Commission the authority to proceed expeditiously to stop and, where appropriate, assess a forfeiture penalty against, any person or entity engaged in

---

[3]   This is the subsection that the Government accuses Defendant of violating.

prohibited caller ID spoofing without first issuing a citation."). The government points to this regulation in support of its position that no warning was required by either the statute or the regulation.

### C. *The TRACED Act.*

Congress subsequently amended § 227(e) in 2019 through the enactment of the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act (the "TRACED Act"), which specifically amended § 227(e)(5)(A)(ii) so that it now expressly provides at § 503(b)(5) does "not apply" to § 227(e) violations. 47 U.S.C. § 227(e)(5)(A)(ii); TRACED Act, 133 Stat. 3274, 3275. Therefore, in essence, Congress recently codified the FCC's rule regarding the impact of § 503(b)(5) on § 227(e) forfeiture actions.

## II.   FACTUAL BACKGROUND

In June 2017, the FCC issued a written Notice of Apparent Liability for Forfeiture (the "NAL") to Defendant. [D.E. 1-3 at 1]. Through the NAL, the FCC communicated that Defendant had apparently violated § 227(e) by making 96,758,223 "spoofed" robocalls over a three-month period in 2016 with the intent to cause harm to consumers. *Id*. at 1-2.

The NAL further stated that the FCC believed Defendant to have separately violated the TCPA through his conduct, and the NAL therefore noted that a separate citation – presumably designed to comply with § 503(b)(5) – had been issued for that separate violation. *See id*. at 1. Nevertheless, the NAL was clear that the FCC was seeking forfeiture specifically pursuant to § 227(e) and that, under the FCC's official

5

interpretation of § 227(e), Defendant was not entitled to a citation under § 503(b)(5). *Id.* at 8. Instead, the NAL served to satisfy the FCC's notice obligations imposed by § 227(e)(5)(A)(iii) and § 503(b)(4). *Id.* The FCC then communicated that it planned to impose a $120,000,000.00 penalty for Defendant's apparent violation of § 227(e). *Id.* at 10.

Defendant responded to the NAL in writing, but to no avail. [D.E. 1-4]. In May 2018, the FCC imposed a forfeiture order against Defendant in the amount of $120,000,000.00. [D.E. 1-5]. Defendant did not pay his fine, and so the FCC referred the matter to the Attorney General for collection. [D.E. 1 at ¶¶ 1, 5]. Defendant now moves to dismiss the Government's complaint because, in his view, it fails to state a claim for which relief can be granted based on failure to plead that it satisfied all conditions precedent to assert the action; namely, the failure to issue a § 503(b) warning before seeking to enforce the TCPA.

### III.   APPLICABLE STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions, or labels will not survive a Rule 12(b)(6) motion to dismiss. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

6

misconduct alleged." *Id.*; *see also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

*Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (internal quotations omitted).

## IV. ANALYSIS

Defendant seeks dismissal based upon two alternative theories. First, Defendant submits that the complaint fails to allege compliance with the statutory procedural requirements that attach to civil forfeiture actions brought under § 227(e).

7

More specifically, Defendant argues that § 227(e) forfeitures require compliance with § 503(b)(5) and therefore the complaint is deficient because the FCC failed to allege that it issued Defendant a warning citation that complied with § 503(b)(5) prior to issuing the NAL for violating § 227(e). Second, Defendant submits that the rule promulgated by the FCC in July 2011 regarding the applicability of § 503(b)(5) is inconsistent with the statutory text and therefore exceeded the power delegated by Congress to the FCC. Thus, Defendant argues, the complaint fails to state a claim because the FCC failed to allege compliance with a required condition precedent – the issuance of a warning citation before the issuance of the NAL. Neither argument is persuasive.

### A. *A warning under § 503(b)(5) was not required in this case.*

Defendant argues that the Government's complaint fails to state a claim because it does not allege that the FCC complied with § 503(b)(5) before penalizing him under § 227(e). The problem for Defendant is that, under the plain text of the statute, penalties imposed under § 227(e) do not need to comply with § 503(b).

"The interpretation of a statute begins with its language." *United States v. St. Amour*, 886 F.3d 1009, 1013 (11th Cir. 2018) (citing *Watt v. Alaska*, 451 U.S. 259, 265 (1981)); *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1738 (2020) ("After all, only the words on the page constitute the law adopted by Congress and approved by the President."). "If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's

8

representatives." *Bostock*, 140 S. Ct. at 1738. Accordingly, the first task is to determine whether the language at issue has a "plain and unambiguous" meaning as to a particular dispute. *St. Amour*, 886 F.3d at 1013. If it does, then the Court need go no further. *Id.*

In 2017, when the FCC issued its NAL to Defendant, the civil forfeiture provision of § 227(e) provided the following.

(5) PENALTIES.—

(A) CIVIL FORFEITURE.—

(i) IN GENERAL.—Any person that is determined by the Commission, in accordance with paragraphs (3) and (4) of section 503(b), to have violated this subsection shall be liable to the United States for a forfeiture penalty. A forfeiture penalty under this paragraph shall be in addition to any other penalty provided for by this Act. The amount of the forfeiture penalty determined under this paragraph shall not exceed $10,000 for each violation, or 3 times that amount for each day of a continuing violation, except that the amount assessed for any continuing violation shall not exceed a total of $1,000,000 for any single act or failure to act.

(ii) RECOVERY.—Any forfeiture penalty determined under clause (i) shall be recoverable pursuant to section 504(a).

(iii) PROCEDURE.—No forfeiture liability shall be determined under clause (i) against any person unless such person receives the notice required by section 503(b)(3) or section 503(b)(4).

(iv) 2-YEAR STATUTE OF LIMITATIONS.—No forfeiture penalty shall be determined or imposed against any person under clause (i) if the violation charged occurred more than 2 years prior to the date of issuance of the required notice or notice or apparent liability.

47 U.S.C. § 227(e)(5)(A); Caller ID Act, 124 Stat. at 3573. To reiterate, Congress did not add language to § 227(e)(5)(A)(ii) that expressly excluded § 503(b)(5) until 2019. In our view, however, the foregoing statutory language clearly and unambiguously establishes which provisions of § 503 the FCC must comply with when pursuing forfeiture under § 227(e)(5)(A) – i.e., only § 503(b)(3) or § 503(b)(4) – because those are the only § 503 provisions identified by Congress in § 227(e)(5)(A) and because neither § 503(b)(3) nor § 503(b)(4) make any reference to § 503(b)(5).

With any question of statutory interpretation, "we begin by examining the text of the statute to determine whether its meaning is clear." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002). We do this because we "presume that Congress said what it meant and meant what it said." *Id.* (quoting *United States v. Steel*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc)).

Here, nothing in the text of § 227(e)(5)(A) implicates § 503 other than Congress' express reference to two specific subsections of § 503(b). It follows that § 227(e)(5)(A) is subject to *only those specific subsections* rather than the entirety of § 503(b) as Defendant contends.

Consider, for example, that when Congress enacted the Caller ID Act, the first function of the Act was "redesignating subsections (e), (f), and (g) as subsections (f), (g), and (h) respectively" so that the Act could be codified at § 227(e). Caller ID Act, 124 Stat. at 3572. Prior to this redesignation, subsections (e), (f), and (g) of § 227 contained multiple enumerated subdivisions. *See, e.g.,* TCPA, 105 Stat. at 2400 (codifying at 47 U.S.C. § 227(e)(1) that some aspects of state law are not preempted

10

by the TCPA); TCPA, 105 Stat. at 2401 (codifying at 47 U.S.C. § 227(f)(2) that the federal courts have exclusive jurisdiction over civil actions brought under the TCPA). It therefore follows that Congress understood how to reference statutory subdivisions with precision when drafting the Caller ID Act. By omitting any reference to § 503(b)(5) in § 227(e)(5)(A) but including express references to § 503(b)(3) and § 503(b)(4), Congress clearly communicated that the FCC needed to comply with only those two discrete subsections of § 503(b) when seeking a forfeiture penalty under § 227(e)(5)(A). Put differently, if Congress wanted to subject § 227(e) forfeitures to *all* the procedural requirements defined in § 503(b), then Congress certainly knew how to do so. Congress' silence is telling evidence of its intent with respect to the notice is demanded for purposes of § 227(e)(5)(A).

We hence cannot agree with Defendant that, despite its nuanced specificity, Congress actually intended to impose all of the § 503(b) procedural requirements on forfeitures sought through § 227(e)(5)(A). The plain text of the statute simply does not support such an interpretation. So we are left with only self-imagined intent that so happens to support Defendant's defense to the government's enforcement action.

Moreover, if we were to agree with Defendant that a reference to § 503(b)(3) and § 503(b)(4) incorporates all of § 503(b), then we would effectively be finding that "(3)" and "(4)" are mere surplusage. It is an "elementary principle of statutory construction that, in construing a statute, we must give meaning to all the words in the statute." *Harry*, 291 F.3d at 771 (finding that the statutorily mandated "stabilization" of a patient was required only when a discrete, statutorily defined

11

condition was present – i.e., "stabilization" treatment was required only in the event of a patient "transfer"). And assigning meaning to "(3)" and "(4)" makes sense in this context because, as the FCC noted when it promulgated a rule in July 2011, Congress enacted the Caller ID Act to empower the FCC to "proceed *expeditiously* to stop and, where appropriate, assess a forfeiture penalty against" any person engaging in unlawful caller ID spoofing. 76 Fed. Reg. 43202 (emphasis added). Requiring compliance with § 503(b)(5) would by necessity do the opposite and slow things down because the FCC would be required to issue a warning citation before assessing a forfeiture penalty. Therefore, in our view, adopting Defendant's proposed interpretation of the statute would not only contradict the plain text of the statute but also cut against an apparent purpose of the law. Such a result cannot be squared with the statutory language we are bound to apply.

Defendant for his part cited no authority from any jurisdiction that supported his interpretation of § 503(b)(5) for the type of penalty at issue here. In fairness to him, however, neither did the Government. Both parties acknowledge that no case has squarely held one way or the other. Indeed this appears to be the first time the FCC is taking this type of enforcement action against an alleged large-scale spoofing operation under the Truth in Caller ID Act. So we are operating in uncharted waters. Given that, the exercise of proper judicial review requires that we enforce as written the statute Congress created. *See also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1626 (2018) ("when Congress wants to mandate particular dispute resolution procedures it knows exactly how to do so"); *Kasten v. Saint-Gobain Performance Plastics Corp.*,

12

563 U.S. 1, 14-15 (2011) ("given Congress' delegation of enforcement powers to federal administrative agencies, we also give a degree of weight to their views about the meaning of this enforcement language."); *cf. Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) (enforcing statutory notice requirement for filing of civil enforcement action based on plain language of statute; "[I]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.").

Accordingly, the Government need not allege its compliance with § 503(b)(5) to sufficiently state a claim upon which relief can be granted. Insofar as this argument is concerned, Defendant's motion is due to be Denied.

**B.** **_The FCC's regulations implementing the Caller ID Act are consistent with the text of § 227(e)._**

Having determined that Congress did not require the FCC to provide Defendant with a § 503(b)(5) warning citation before issuing an NAL for violating § 227(e), Defendant's next argument is likely moot. We nevertheless proceed with our analysis and conclude that the FCC did not exceed its authority by promulgating a rule in July 2011 that established its official interpretation of the Caller ID Act.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), provides a two-part test for assessing an agency's statutory construction. First, if the statutory text is unambiguous and answers the question presented, the Court applies the text according to its terms with no need for deference. *Id.* at 842-43. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of

13

Congress." *Id*. But if the statute is ambiguous or does not speak to the question presented, then the Court must determine at step two "whether the agency's answer is based on a permissible construction of the statute." *Id*. at 843.

To reiterate, we find that § 227(e)(5)(A) unambiguously provides that the FCC need not comply with § 503(b)(5) when pursuing a forfeiture penalty arising from a violation of § 227(e). But assuming for the sake of argument that, prior to the 2019 amendment, some ambiguity concerning the applicability of § 503(b)(5) existed, we nevertheless conclude that the FCC's interpretation constitutes a reasonable and permissible construction of the statute.

As we explained above, the plain text of § 227(e)(5)(A) indicates that the FCC must comply only with § 503(b)(3) or § 503(b)(4) when seeking a forfeiture pursuant to § 227(e) because Congress specifically identified those subsections – and only those subsections – when it passed the Caller ID Act. The FCC's interpretation is therefore founded upon a simple and straightforward reading of the statutory text. In other words, nothing about the FCC's interpretation contradicts the plain text of the statute; the FCC's interpretation is, by contrast, consistent with the language drafted by Congress and approved by the President.

Compared to the Environmental Protection Agency's attempt to divine the correct interpretation of a nebulous term like the "waters of the United States," *see Sackett v. EPA*, 598 U.S. \_\_\_ (2023) (slip op. at 6), the FCC was presented with a relatively straightforward question when it considered whether § 503(b)(5) applied to § 227(e) forfeitures. The FCC's answer, which seems remarkably reasonable in our

14

view, was that § 503(b)(5) did not apply to § 227(e) forfeitures because Congress clearly omitted § 503(b)(5) from the list of § 503(b) procedures that applied to § 227(e) forfeitures. Again, we presume that Congress said what it meant and meant what it said. The FCC surely understood this well-established maxim, and therefore the FCC permissibly concluded that Congress' decision to list § 503(b)(3) and § 503(b)(4) but not § 503(b)(5) constituted an intentional choice by Congress to subject § 227(e) forfeitures to the procedures defined in § 503(b)(3) and § 503(b)(4) exclusively. Therefore, as a matter of enforcing a valid exercise of regulatory authority, the Government need not allege compliance with § 503(b)(5) to sufficiently state a claim against Defendant. The pending motion can thus be Denied on this basis as well.

And so, having found that both of Defendant's arguments lack merit, his motion to dismiss should be DENIED.

## V.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.,*

*Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of December, 2023.

EDWIN G. TORRES
Chief United States Magistrate Judge